UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Peter Barnhart,                                               Case No. 3:16-cv-2597

             Plaintiff,

v.                                                       MEMORANDUM OPINION
                                                               AND ORDER

Troy Dilinger, et al.,

             Defendants.

## I. INTRODUCTION

Plaintiff Peter Barnhart and Defendants Troy Dillinger[1] and Edward Ohlemacher have filed cross-motions for summary judgment. (Doc. No. 25 and Doc. No. 26). The parties filed briefs in opposition to the other side's motion. (Doc. No. 28 and Doc. No. 29). Defendants filed a reply brief in support of their motion for summary judgment, (Doc. No. 30), which Barnhart has moved to strike. (Doc. No. 31). Defendants filed a brief in response to Barnhart's motion to strike. (Doc. No. 32). For the reasons stated below, I grant the Defendants' motion for summary judgment and deny Barnhart's motions.

## II. BACKGROUND

At around 12:30 p.m. on October 20, 2016, Troy Dillinger, an officer with the Sandusky, Ohio Police Department, observed a person who he believed to be Barnhart driving a Chevrolet pickup truck in the City of Sandusky. Dillinger ran Barnhart's information through the Law

---

[1] Dillinger's name is misspelled in the caption of the complaint. (*See* Doc. No. 1 at 1).

Enforcement Automated Data System ("LEADS") and confirmed Barnhart did not have a valid driver's license and, via a picture in LEADS, that Barnhart was driving the vehicle. (Doc. No. 23 at 69-70).

Dillinger and Ohlemacher pulled over the truck, which was registered to Chelse Kirksey. Dillinger approached the driver's side of the vehicle, while Ohlemacher walked to the passenger side. There were two men inside the vehicle. Once Dillinger confirmed Barnhart was the individual sitting in the driver's seat, he informed Barnhart he had pulled him over because his license was suspended. Barnhart replied that he had never had a driver's license and did not know how it could be suspended. (Doc. No. 25-5, Dillinger body camera at 12:31:16 – 12:31:18). Dillinger said the license could be suspended for a variety of reasons even if Barnhart did not have a license and stated Barnhart should not be driving. Barnhart responded that he was not driving, because the legal definition of driving required that the person be performing a function of government or engaged in business or commerce. (*Id.* at 12:31:50 – 12:31:57).

Barnhart asserted he was a traveler and that state law driver's-license requirements violated the Constitution and federal law. Dillinger stated during his deposition that he recognized Barnhart's assertions and legal arguments as being in line with the sovereign citizen's movement. *See, e.g., United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013) ("The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group." (citing "Sovereign Citizens A Growing Domestic Threat to Law Enforcement," FBI Law Enforcement Bulletin (Sept. 2011)).

This back and forth continued until Dillinger asked the man in the passenger seat to remove his hand from his pocket. Dillinger told Ohlemacher the man had reached into his pocket and was digging around. The officers asked the man to step out of the vehicle and conducted a pat down.

2

The passenger complied and Ohlemacher confirmed the man had a cell phone in his pocket, as he claimed, and did not have any weapons.

Dillinger returned to the driver's side of the vehicle and asked Barnhart to step out of the vehicle because he was going to search it before having it towed pursuant to department policy. (*Id.* at 12:34:55-12:36:15). Barnhart exited the vehicle but began protesting when Dillinger asked him to remove his hands from his pockets. (*Id.* at 12:35:29 – 12:35:35). Before Dillinger mentioned conducting a pat down, Barnhart told Dillinger he did not want Dillinger to search him and that a search would violate his rights. (*Id.*). Dillinger performed the pat down, which did not turn up any weapons or contraband. Ohlemacher found marijuana in the center console, for which Barnhart received a summons, while performing the inventory search of the truck. The truck then was towed, and Barnhart initiated this litigation five days later.

### III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV.  ANALYSIS

### A.  FOURTH AMENDMENT

Barnhart alleges Defendants violated his Fourth Amendment rights by (1) interfering with his "fundamental constitutional right" to travel by conducting the traffic stop, (2) removing him from his vehicle, (3) conducting a pat down search, and (4) searching the interior of the truck. (*See* Doc. No. 29-1 at 7, Doc. No. 1 at 4-5). Each claim falls short.

The Fourth Amendment permits a law enforcement officer to stop a vehicle if the officer has "probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). It is well-established that states may enact and enforce traffic laws, including requiring individuals to have a valid driver's license in order to operate a motor vehicle. *See, e.g., Whren v. United States*, 517 U.S. 806 (1996); *United States v. Warfield*, 404 F. App'x 994, 996-97 (6th Cir. 2011). Officers do not violate a driver's constitutional rights when they conduct a traffic stop based upon reasonable grounds to support the belief that the driver does not have a valid license. *United States v. Doxey*, 833 F.3d 692, 704 (6th Cir. 2016) (Officer's knowledge that defendant had a suspended license constituted reasonable suspicion sufficient to justify a traffic stop); *see also Hadley v. United States*, No. 1:06-CR-5, 2010 WL 2573490, at *5 (W.D. Mich. June 22, 2010) (Officer was justified in conducting a traffic stop when the officer knew, based upon prior contacts with the driver, that the driver's license was suspended).

Dillinger had reasonable grounds to believe, and both Barnhart and the LEADS database confirmed, that Barnhart did not have a valid driver's license. Dillinger witnessed Barnhart driving the truck in violation of Ohio law. Therefore, the traffic stop was justified and did not violate Barnhart's Fourth Amendment rights.

Once an officer lawfully stops a vehicle, the officer, without violating the Fourth Amendment, may order the driver to get out of the vehicle because "[t]he government's 'legitimate

4

and weighty' interest in officer safety . . . outweighs the 'de minimis' additional intrusion of requiring a driver . . . to exit the vehicle." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977)). Thus, Defendants did not violate the Fourth Amendment by instructing Barnhart to exit the truck.

Barnhart also fails to establish Dillinger's warrantless pat down search violated his rights. Dillinger stated he conducted the pat down because of the passenger's suspicious behavior, Barnhart's use of "sovereign citizen's verbiage," his training that some sovereign citizens have engaged in violence toward law enforcement officers, and the fact that Barnhart became agitated when Dillinger asked Barnhart to remove his hands from his pockets. (Doc. No. 23 at 76-77; Doc. No. 25-5 at 12:35:29 – 12:35:35).

An officer may pat down a driver and any passengers "upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (citation omitted). "Reasonable suspicion is based on the totality of the circumstances." *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003). Reasonable suspicion "requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778-79 (6th Cir. 2006)).

While not dispositive, an officer's training and experience is relevant to the determination of whether the officer had reasonable suspicion to justify a pat down. *United States v. Noble*, 762 F.3d 509, 524 (6th Cir. 2014). Other courts have specifically credited law enforcement concerns about the potential for violence during encounters with individuals who identify with the sovereign-citizen movement. *See, e.g., United States v. Dowis*, NO.: 2:12-CR-030, 2013 WL 12169389, *2 (N.D. Ga.

5

March 28, 2013) (noting law enforcement officers treated the eviction of the defendants, who identified as a sovereign citizen, differently from other evictions because "there [had] been several violent encounters between Sovereign Citizens and law enforcement officers, including an incident a year prior . . . involving a traffic pursuit of a Sovereign Citizen and a gunfight between officers and the Sovereign Citizen, resulting in the deaths of officers").

I conclude Dillinger had reasonable suspicion to support the pat down search, based upon the totality of the circumstances, including the passenger's conduct, his training regarding potential threats posed by sovereign citizens, and Barnhart's unprompted protests about being searched.

Lastly, Barnhart's claim that the inventory search was unreasonable also falls short. "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *United States v. Snoddy*, 976 F.3d 630 (6th Cir. 2020) (quoting *Whren*, 517 U.S. at 811 n.1).

Barnhart's reliance on *South Dakota v. Opperman*, 428 U.S. 364 (1976), does not help his position. (*See* Doc. No. 29-1 at 11-12). Barnhart relies on Justice Marshall's dissenting opinion, in which Justice Marshall objected to the Court's holding specifically because the Court permitted officers to conduct an inventory search "without attempting to secure the consent of the owner." *Opperman*, 428 U.S. at 385; *see also id.* at 394-95. The Court itself held the inventory search was reasonable. *Id.* at 369-71.

Ohio law permitted the officers to have the truck towed and impounded. Barnhart does not offer any evidence that Ohlemacher did not conduct the inventory search in compliance with department policy. Barnhart fails to show Defendants violated his Fourth Amendment rights in searching the truck before it was towed. *See Jackson*, 682 F.3d at 453-54.

6

Because I conclude Barnhart's constitutional rights were not violated, I need not consider Defendants' sovereign-immunity defense.

### B.     DUE PROCESS

Barnhart also claims Defendants violated his due-process rights under the Fifth and Fourteenth Amendments.  (Doc. No. 1 at 5-7).  These claims fall short as well.

Barnhart asserts Defendants violated his Fifth Amendment due process rights because they seized him and searched the truck without first seeking a warrant during a hearing before an impartial judge.  (Doc. No. 1 at 5-6).  This claim fails for two reasons.  First, the necessity of a warrant is a matter covered by the Fourth Amendment and not the Fifth Amendment.  *See, e.g., United States v. Macklin*, 819 F. App'x 372, 377 (6th Cir. 2020) (affirming district court's denial of motion to suppress based upon alleged due process violation; officer had probable cause to stop defendant and therefore his Fourth Amendment rights were not violated).  Second, "the due process clause of the Fifth Amendment applies only to the federal government, and not to state or individual action." *Wynn v. Morgan*, 861 F. Supp. 622, 630 (E.D. Tenn. 1994) (citations omitted).

Barnhart's claim that Defendants violated his Fourteenth Amendment due process and equal protection rights also fail.  When a plaintiff's constitutional claim is covered by a specific constitutional provision, like the Fourth Amendment, a court must analyze the claim under that provision and not the "more generalized notion of substantive due process" under the Fourteenth Amendment.  *Estate of George v. Michigan*, 63 F. App'x 208, 212 (6th Cir. 2003) ("Because we must determine in this case whether the actions of two troopers conducting an ordinary traffic stop infringed upon the legal rights of [the plaintiff], we find that the facts are properly analyzed under the Fourth Amendment, not the Fourteenth.").  Nor does Barnhart have a Fourteenth Amendment procedural due process claim because, like his Fifth Amendment claim, the appropriateness of warrantless searches and seizures is measured by the Fourth Amendment.

7

Lastly, Barnhart asserts Defendants violated his equal protection rights because they restrained his "natural functions and motion" and prohibited him "from following the dictates of his unrestricted choice without coercion and control of other persons." (Doc. No. 1 at 6). This claim fails because he offers no evidence that Defendants selectively enforced the traffic laws based upon an impermissible consideration such as race, age, or sex. *See, e.g., Whren*, 517 U.S. at 813. Barnhart's ideology does not place him in a protected class, nor does it exempt him from following basic traffic regulations.

Barnhart fails to identify a genuine dispute of material fact concerning his due-process claims and I conclude Defendants are entitled to summary judgment on these claims as a matter of law.

### C. MOTION TO STRIKE

Finally, Barnhart moves to strike Defendants' reply brief, arguing it is improper because I did not set a deadline for filing reply briefs as part of the summary judgment briefing schedule. (Doc. No. 31).

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of this motion "'avoid[s] the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation omitted). Such motions are disfavored. *Id.*

The movant must demonstrate the challenged matter "has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant[ ]." *See* 2 Moore's Federal Practice § 12.37[3] (3d ed. 2017). Motions to strike are aimed at material contained in pleadings. *See Fox v. Michigan State Police Dep't*, 173 Fed. Appx. 372, 375 (6th Cir. 2006).

While reply briefs ordinarily are unnecessary when parties agree to a simultaneous briefing schedule on competing motions such as those at issue in this case, Barnhart's motion does not target

a pleading, as contemplated by Rule 12(f), and Defendants' reply brief had no impact on the resolution of the parties' motions for summary judgment. I conclude Barnhart has not established a basis for striking Defendants' reply brief and deny his motion. (Doc. No. 31).

### IV. CONCLUSION

For the reasons stated above, I deny Barnhart's motion for summary judgment, (Doc. No. 26), and his motion to strike, (Doc. No. 31), and grant Defendants' motion for summary judgment. (Doc. No. 25).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge